IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

------------------------------------------------------- x
                                                :
In re:                                       :        Chapter 11
                                                :
S & K FAMOUS BRANDS, INC.,         :        Case No. 09-30805-KRH
                                                :
                   Debtor.                  :        Judge Kevin R. Huennekens
                                                :
------------------------------------------------------- x

**MOTION AND SUPPORTING MEMORANDUM OF CERTAIN TAUBMAN
LANDLORDS FOR AN ORDER (A) COMPELLING DEBTOR TO IMMEDIATELY
PAY ADMINISTRATIVE RENT PURSUANT TO 11 U.S.C. § 365(d)(3) AND (B)
<u>GRANTING RELATED RELIEF</u>**

Fairfax Company of Virginia, L.L.C. ("<u>Fairfax Company</u>"), TRG Charlotte LLC ("<u>TRG</u>"), and Taubman Regency Square Associates, LLC ("<u>Taubman Regency Square</u>"), each an affiliate of Taubman Centers, Inc. (collectively, the "<u>Taubman Landlords</u>"), by and through their counsel, Hunton & Williams LLP, hereby move this Court to enter an order, substantially in

J.R. Smith [VSB # 41913]
Thomas N. Jamerson [VSB # 75035]
Henry (Toby) P. Long, III [VSB # 75134]
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219-4074
Telephone: (804) 788-8761
Facsimile: (804) 788-8218

and

J. Eric Crupi [VSB # 46782] (admitted *pro hac vice*)
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, DC  20006
Telephone: (202) 419-2143
Facsimile: (202) 778-7445

and

Andrew S. Conway [Mich. Bar # P36244] (admitted *pro hac vice*)
THE TAUBMAN COMPANY
200 E. Long Lake Road, Suite 300
Bloomfield Hills, MI  48304
Telephone: (248) 258-7427

Counsel for the Taubman Landlords

the form attached hereto as "Exhibit G," (i) authorizing and directing S & K Famous Brands, Inc., the debtor and debtor in possession in the above-captioned bankruptcy case (the "Debtor"), to immediately pay administrative rent in the total aggregate amount of $52,363.59 owed to the Taubman Landlords pursuant to the Leases (as defined below) and Section 365(d)(3) of Chapter 11 of Title 11 of the United States Code, §§ 101-1532 (as amended, the "Bankruptcy Code"), and (ii) granting related relief, all as more specifically described herein (the "Motion"). In support of this Motion, the Taubman Landlords respectfully state as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BASIS FOR RELIEF

2. The statutory basis for the relief requested herein is Section 365(d)(3) of the Bankruptcy Code.

## BACKGROUND

3. The Taubman Landlords are the lessors and landlords of certain nonresidential real properties leased to the Debtor located in (i) Fair Oaks Mall in Fairfax County, Virginia (the "Fair Oaks Store"), (ii) Northlake Mall in Charlotte, North Carolina (the "Northlake Store"), and (iii) Regency Square Mall in Richmond, Virginia (the "Regency Square Store," and collectively with the Fair Oaks Store and the Northlake Store, the "Leased Premises").

### A. The Fair Oaks Store

4. Fairfax Company leases the Fair Oaks Store to the Debtor pursuant to a lease dated May 31, 2006, as amended by that certain First Modification of Lease Agreement dated January 8,

2009 (the "Fair Oaks Amendment"), by and between Fairfax Company and the Debtor (together, the "Fair Oaks Lease"). A true and accurate copy of the Fair Oaks Lease is attached hereto as "Exhibit A."

5. Fairfax Company entered into the Fair Oaks Amendment with the Debtor in an effort to increase the Debtor's monthly cash flow and otherwise aid the Debtor's ailing financial condition. Pursuant to the Fair Oaks Amendment, Fairfax Company allowed the Debtor to defer all but $1,599.58 of the Debtor's total monthly minimum rent obligation from January 1, 2009 through December 31, 2011, so long as certain agreed-upon conditions were satisfied (the "Deferred Fair Oaks Rent").[1] These conditions required the Debtor to be "open for business and operating in accordance with the provisions of Article VII of the [Fair Oaks Lease] and not otherwise in default at any time." Fair Oaks Amendment, § 2. Pursuant to Section 7.02 of Article VII of the Fair Oaks Lease, "[n]o auction, liquidation, going out of business, fire, or bankruptcy sales may be conducted or advertised by sign or otherwise in the leased premises." Fair Oaks Lease, § 7.02.

6. Further, pursuant to the Fair Oaks Amendment, Fairfax Company agreed to waive the Deferred Fair Oaks Rent upon the expiration of the term of the Fair Oaks Lease, so long as the foregoing conditions were satisfied throughout the term of the Fair Oaks Lease. Fair Oaks Amendment, § 2. Conversely, the parties agreed that in the event the Debtor failed to satisfy any of the foregoing conditions, Fairfax Company would have the right to demand the Debtor's payment of the portion of the Deferred Fair Oaks Rent that had been previously deferred (the "Fair Oaks Claw Back"), in addition to the Debtor thereafter losing its right to defer any additional amounts due under the Fair Oaks Lease. Fair Oaks Amendment, § 3.

---

[1] The deferred monthly minimum rent amounts under the Fair Oaks Lease during the period from January 1, 2009, through January 31, 2010, and during the period from February 1, 2010, through December 31, 2011, are $4,878.73 and $5,278.63, respectively.

3

### B. The Northlake Store

7. TRG leases the Northlake Store to the Debtor pursuant to a lease dated December 29, 2004, as amended by that certain First Modification of Lease Agreement dated January 8, 2009 (the "Northlake Amendment"), by and between TRG and the Debtor (together, the "Northlake Lease"). A true and accurate copy of the Northlake Lease is attached hereto as "Exhibit B."

8. As in the case of the Fair Oaks Amendment, TRG entered into the Northlake Amendment with the Debtor in an effort to increase the Debtor's monthly cash flow and otherwise aid the Debtor's ailing financial condition. Pursuant to the Northlake Amendment, TRG allowed the Debtor to defer all but $2,442.70 of the Debtor's total monthly minimum rent obligation from January 1, 2009 through December 31, 2011, so long as certain agreed-upon conditions were satisfied (the "Deferred Northlake Rent").[2] These conditions required the Debtor to be "open for business and operating in accordance with the provisions of Article VII of the [Northlake Lease] and not otherwise in default at any time." Northlake Amendment, § 2. Pursuant to Section 7.02 of Article VII of the Northlake Lease, "[n]o auction, liquidation, going out of business, fire, or bankruptcy sales may be conducted or advertised by sign or otherwise in the leased premises." Northlake Lease, § 7.02.

9. Further, pursuant to the Northlake Amendment, TRG agreed to waive the Deferred Northlake Rent upon the expiration of the term of the Northlake Lease, so long as the foregoing conditions were satisfied throughout the term of the Northlake Lease. Northlake Amendment, § 2. Conversely, the parties agreed that in the event the Debtor failed to satisfy any of the foregoing conditions, TRG would have the right to demand the Debtor's payment of the portion of the Deferred Northlake Rent that had been previously deferred (the "Northlake Claw Back"), in

---

[2] The deferred monthly minimum rent amount under the Northlake Lease during the period from January 1, 2009, through December 31, 2011, is $3,908.34.

4

addition to the Debtor thereafter losing its right to defer any additional amounts due under the Northlake Lease. Northlake Amendment, § 3.

### C. The Debtor's GOB Sales at the Fair Oaks Store and the Northlake Store, and the Failed Conditions

10. On February 9, 2009 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Court").

11. The Debtor currently remains in possession of, and enjoys the use and occupancy of, the Northlake Store.[3]

12. On May 8, 2009, the Debtor filed its motion with this Court seeking, among other things, this Court's entry of an order authorizing the Debtor to enter into and consummate that certain Agency Agreement dated as of May 8, 2009, by and between the Debtor and Hilco Merchant Resources LLC (the "Agency Agreement"), or, in lieu thereof, such other Winning Bidder (as defined therein) (the "GOB Sale Approval Motion") [Docket No. 310].

13. On May 19, 2009, Fairfax Company and TRG filed an objection to the GOB Sale Approval Motion (the "Objection") [Docket No. 339], arguing, among other things, that the Debtor had calculated Occupancy Expenses (as defined in the Agency Agreement) on a per diem basis attributable to the Fair Oaks Lease and the Northlake Lease in amounts that were less than the per diem rent and related charges accruing under the Fair Oaks Lease and the Northlake Lease, respectively. This Court declined to rule on this particular element of the Objection at the hearing on the GOB Sale Approval Motion.

---

[3] On June 12, 2009, the Debtor filed a motion with this Court seeking to reject, among other leases, the Fair Oaks Lease and the Northlake Lease. The motion seeks to reject the Fair Oaks Lease as of June 24, 2009, and the Debtor seeks the authority to reject the Northlake Lease upon at least 7 days' notice to TRG pursuant to court-approved rejection notice procedures. The Court granted the motion on June 23, 2009, but has not yet entered an order to that effect on the Debtor's case docket.

14. On May 20, 2009, this Court entered its order approving the GOB Sale Approval Motion, thereby authorizing the Debtor to, among other things, conduct "going out of business" sales at the Fair Oaks Store and the Northlake Store and to retain Gordon Brothers Retail Partners, LLC ("Gordon Brothers") as the Debtor's exclusive agent for the administration of such sales (the "GOB Sale Approval Order") [Docket No. 345].

15. On or about the date of this Court's entry of the GOB Sale Approval Order, the Debtor commenced its "going out of business" sales at the Fair Oaks Store and the Northlake Store. Upon doing so, the Debtor no longer satisfied one of the previously described conditions to Fairfax Company's and TRG's agreement to defer a portion of the Debtor's monthly minimum rent obligations under the Fair Oaks Lease and the Northlake Lease; namely, the Debtor, with the assistance of Gordon Brothers, conducted a "liquidation, going out of business, fire, or bankruptcy sale" in violation of Section 7.02 of each of the Fair Oaks Lease and the Northlake Lease (each, a "Failed Condition" and together, the "Failed Conditions").

**D.     The Outstanding Amounts Owed by the Debtor Under the Fair Oaks Lease**

16. Pursuant to the Fair Oaks Lease, the Debtor is required to pay to Fairfax Company the following charges, on or before the 1st day of each applicable calendar month or within 10 days after demand, as applicable: minimum rent, additional minimum rent, common area and maintenance charges, real estate taxes and assessments, promotion charges, insurance charges, and/or other monthly charges (collectively, the "Fair Oaks Lease Charges"). Fair Oaks Lease, §§ 2.01 & 2.06.

17. Pursuant to the Fair Oaks Lease, the Debtor owes Fair Oaks Lease Charges to Fairfax Company that have accrued for June 2009 in the total amount of $17,975.47, which includes Deferred Fair Oaks Rent in the amount of $4,878.73 that the Debtor is obligated to pay on account

6

of the Failed Condition with respect to the Fair Oaks Amendment (the "June Fair Oaks Lease Charges").  Although Fairfax Company received a payment from the Debtor on or about June 8, 2009, in the amount of $13,155.30, the Debtor still owes Fairfax Company the balance of the June Fair Oaks Lease Charges in the amount of $4,713.75, as adjusted for certain credits.

18. In addition, pursuant to the Fair Oaks Lease, the Debtor owes to Fairfax Company the portion of the Fair Oaks Claw Back accruing from and after the Petition Date in the amount of $18,121.00 on account of the Failed Condition with respect to the Fair Oaks Amendment (the "Post-Petition Fair Oaks Claw Back").

19. As of the date of this Motion, the Debtor owes Fairfax Company an aggregate total of $22,834.75 (i.e., the June Fair Oaks Lease Charges plus the Post-Petition Fair Oaks Claw Back) pursuant to the Fair Oaks Lease (the "Outstanding Fair Oaks Lease Charges").  A detailed report of the Outstanding Fair Oaks Lease Charges is attached hereto as "Exhibit C."

**E.    The Outstanding Amounts Owed by the Debtor Under the Northlake Lease**

20. Pursuant to the Northlake Lease, the Debtor is required to pay to TRG the following charges, on or before the 1st day of each applicable calendar month or within 10 days after demand, as applicable:  minimum rent, additional minimum rent, common area and maintenance charges, real estate taxes and assessments, promotion charges, insurance charges, and/or other monthly charges (collectively, the "Northlake Lease Charges").  Northlake Lease, §§ 2.01 & 2.06.

21. Pursuant to the Northlake Lease, the Debtor owes Northlake Lease Charges to TRG that have accrued for June 2009 in the total amount of $14,416.20, which includes Deferred Northlake Rent in the amount of $3,908.34 that the Debtor is obligated to pay on account of the Failed Condition with respect to the Northlake Amendment (the "June Northlake Lease Charges").  Although TRG received a payment from the Debtor on or about June 5, 2009, in the amount of

$10,507.86, the Debtor still owes TRG the balance of the June Northlake Lease Charges in the amount of $3,908.34.

22.    In addition, pursuant to the Northlake Lease, the Debtor owes to TRG the portion of the Northlake Claw Back accruing from and after the Petition Date in the amount of $14,516.69 on account of the Failed Condition with respect to the Northlake Amendment (the "Post-Petition Northlake Claw Back").

23.    As of the date of this Motion, the Debtor owes TRG an aggregate total of $18,425.03 (i.e., the June Northlake Lease Charges plus the Post-Petition Northlake Claw Back) pursuant to the Northlake Lease (the "Outstanding Northlake Lease Charges"). A detailed report of the Outstanding Northlake Lease Charges is attached hereto as "Exhibit D."

### F.    The Regency Square Store

24.    Taubman Regency Square leases the Regency Square Store to the Debtor pursuant to a lease dated May 31, 2006, as amended by that certain First Modification of Lease Agreement dated January 8, 2009, by and between Regency Square and the Debtor (together, the "Regency Square Lease," and collectively with the Fair Oaks Lease and the Northlake Lease, the "Leases"). A true and accurate copy of the Regency Square Lease is attached hereto as "Exhibit E."

25.    Pursuant to the Regency Square Lease, the Debtor is required to pay to Taubman Regency Square the following charges, on or before the 15th day following the end of each applicable calendar month or within 10 days after demand, as applicable:  minimum rent, common area and maintenance charges, real estate taxes and assessments, promotion charges, insurance charges, and/or other monthly charges (collectively, the "Regency Square Lease Charges"). Regency Square Lease, §§ 2.01 & 2.06; Data Sheet to Regency Square Lease, § (4)(i).

26.    Pursuant to the Regency Square Lease, the Debtor owes Regency Square Lease

Charges to Taubman Regency Square that have accrued from the Petition Date through February 28, 2009, in the total amount of $1,135.08 (the "February Lease Charges"). In addition, the Debtor owes additional Regency Square Lease Charges to Taubman Regency Square in the amount of $8,584.17 for the post-petition period from April 1, 2009 through April 30, 2009 (the "April Lease Charges"). Finally, the Debtor owes additional Regency Square Lease Charges to Taubman Regency Square in the amount of $1,384.56 for the post-petition stub period from May 1, 2009, through May 5, 2009, the date upon which the Debtor rejected the Regency Square Lease by prior order this Court (the "Stub-May Lease Charges").

27. The aggregate sum of the February Lease Charges, the April Lease Charges, and the Stub-May Lease Charges is $11,103.81 (the "Outstanding Regency Square Lease Charges"). A copy of an Account Status Report detailing the Outstanding Regency Square Lease Charges currently due and owing pursuant to the Regency Square Lease and Section 365(d)(3) of the Bankruptcy Code is attached hereto as "Exhibit F."

28. The Debtor remained in possession of, and enjoyed the use and occupancy of, the Regency Square Store through approximately its rejection of the Regency Square Lease as of May 5, 2009.

## RELIEF REQUESTED

29. The Taubman Landlords seek this Court's entry of an order, substantially in the form attached hereto as "Exhibit G," (i) authorizing and directing the Debtor to immediately pay the (A) Outstanding Fair Oaks Lease Charges in the amount of $22,834.75 to Fairfax Company, (B) Outstanding Northlake Lease Charges in the amount of $18,425.03 to TRG, and (C) Outstanding Regency Square Lease Charges in the amount of $11,103.81 to Taubman Regency Square, (ii) authorizing and directing the Debtor to reimburse the Taubman Landlords for all of

9

their reasonable attorneys' fees and costs incurred in preparing and prosecuting this Motion due to the Debtor's failure to comply with the terms of the respective Leases and Section 365(d)(3) of the Bankruptcy Code, and (iii) granting such other and further relief as this Court deems just and proper.

## ARGUMENT

30.     Section 365(d)(3) of the Bankruptcy Code provides, in relevant part, as follows:

> The trustee shall *timely perform all the obligations of the debtor*, . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of [Title 11 of the Bankruptcy Code].

11 U.S.C. § 365(d)(3) (emphasis added).

31.     The unique position of the nonresidential real property lessor during the post-petition, pre-rejection period is recognized and addressed by Section 365(d)(3) of the Bankruptcy Code and reinforced through case law.  The Richmond and Norfolk Divisions of the U.S. Bankruptcy Court for the Eastern District of Virginia, as well as courts in other jurisdictions, have repeatedly held that Section 365(d)(3) requires the timely payment of post-petition rent as an administrative expense at the full contract rate.  See In re Trak Auto Corporation, 277 B.R. 655, 665 (Bankr. E.D. Va. 2002)  ("Until the debtor's leases are rejected, debtor is required to pay rent to the landlord from the date the bankruptcy petition is filed until the date the lease is rejected"), rev'd on other grounds, 367 F.3d 237 (4th Cir. 2004).  Indeed, the court in Trak Auto specifically recognized that "[a] landlord may move to compel payment of pre-rejection rent under § 365(d)(3)." Id. at 669; see also In re Best Products Company, Inc., 206 B.R. 404, 407 (Bankr. E.D. Va. 1997)  ("Congress enacted § 365(d)(3) to guarantee that landlords would not be placed at a disadvantage for providing post-petition services to the debtor"); Child World, Inc. v. Campbell/Massachusetts Trust (In re

10

Child World, Inc.), 161 B.R. 571, 575 (S.D.N.Y. 1993) (Section 365(d)(3) fixes "the amount to be paid by debtor-tenants pending assumption or rejection of the lease at the amount provided in the lease . . . and by requiring these payments to be paid at the time required in the lease"); In re Financial News Network, Inc., 149 B.R. 348, 352 n.4 (Bankr. S.D.N.Y. 1993) (same).

32.    The Taubman Landlords assert that all of the requested relief in this Motion is also consistent with this Court's reasoning underlying its prior ruling in re Circuit City Stores, Inc., et al., that clarifies a debtor's obligation to "timely" pay stub rent pursuant to Section 365(d)(3) of the Bankruptcy Code.[4]  See Memorandum Opinion in Support of Findings of Fact and Conclusions of Law from Hearing Held December 22, 2008 on Motions to Compel Payment of Postpetition Rent, entered February 12, 2009, at 12-13 [Docket No. 2107] ("The obligation to "timely" perform that is referenced in § 365(d)(3) refers to the time for performance under the lease terms.").

33.    In addition, Section 11.03 of each of the Leases provides that the Debtor is obligated to indemnify the respective Taubman Landlord for, and to save that Taubman Landlord harmless from and against, any and all "cost and expense, including attorneys' fees, in connection with all losses . . . arising from or out of [the Debtor's] failure to comply with any provision of [the] Lease or occasioned wholly or in part by any act or omission of [the Debtor]." Accordingly, the Taubman Landlords request that the Debtor be authorized and directed to reimburse the Taubman Landlords for all of their reasonable attorneys' fees and costs incurred in preparing and prosecuting this Motion due to the Debtor's failure to comply with the terms of the respective Leases and Section 365(d)(3) of the Bankruptcy Code.

34.    In summary, the Debtor, having benefited from the use of all of the Leased Premises

---

[4] In light of this Court's prior ruling, the Taubman Landlords are not requesting at this time the Debtor's immediate payment of the non-deferred portion of stub-February 2009 rent and the other stub-February 2009 charges that have accrued and are outstanding under the two "pay-in-advance" leases at issue: the Fair Oaks Lease and the Northlake Lease.  However, as explained above, the Regency Square Lease is a "pay-in-arrears" lease.

11

over the last several months in order to conduct its "going out of business" sales, should not be permitted to further delay the performance of its obligations under the Leases, Section 365(d)(3) of the Bankruptcy Code, and supporting case law.

## NOTICE

35. Notice of this Motion and the hearing thereon will be given to all of the parties on the Primary Service List (as defined in the Case Management Order for the Debtor's case). The Taubman Landlords submit that no other or further notice of this Motion is required.

## WAIVER OF MEMORANDUM OF LAW

36. The Taubman Landlords respectfully request that this Court treat this Motion as a written memorandum of points and authorities or waive any requirement that this Motion be accompanied by a written memorandum of points and authorities as described in Rule 9013-1(G) of the Local Rules of the U.S. Bankruptcy Court for the Eastern District of Virginia.

## NO PRIOR MOTION

37. No previous motion for the relief sought herein has been made by any of the Taubman Landlords to this Court or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**WHEREFORE**, the Taubman Landlords seek this Court's entry of an order, substantially in the form attached hereto as "Exhibit G," (i) authorizing and directing the Debtor to immediately pay the (A) Outstanding Fair Oaks Lease Charges in the amount of $22,834.75 to Fairfax Company, (B) Outstanding Northlake Lease Charges in the amount of $18,425.03 to TRG, and (C) Outstanding Regency Square Lease Charges in the amount of $11,103.81 to Taubman Regency Square, (ii) authorizing and directing the Debtor to reimburse the Taubman Landlords for all of their reasonable attorneys' fees and costs incurred in preparing and prosecuting this Motion due to the Debtor's failure to comply with the terms of the respective Leases and Section 365(d)(3) of the Bankruptcy Code, and (iii) granting such other and further relief as this Court deems just and proper.

Respectfully Submitted,

Dated: July 2, 2009
Richmond, Virginia

/s/ Thomas N. Jamerson
J.R. Smith [VSB # 41913]
Thomas N. Jamerson [VSB # 75035]
Henry (Toby) P. Long, III [VSB # 75134]
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219-4074
Telephone: (804) 788-8761
Facsimile: (804) 788-8218

and

J. Eric Crupi [VSB # 46782]
(admitted *pro hac vice*)
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, DC  20006
Telephone: (202) 419-2143
Facsimile: (202) 778-7445

and

Andrew S. Conway [Mich. Bar # P36244]
(admitted *pro hac vice*)
THE TAUBMAN COMPANY
200 E. Long Lake Road, Suite 300
Bloomfield Hills, MI  48304
Telephone: (248) 258-7427

Counsel for the Taubman Landlords

## **CERTIFICATE OF SERVICE**

       I hereby certify that on July 2, 2009, a true and complete copy of the foregoing was served via United States mail, first class, postage prepaid and/or by electronic delivery via the Court's ECF System to all of the parties on the Primary Service List (as defined in the Case Management Order for the Debtor's case).

                                                                /s/ Thomas N. Jamerson