## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

```
-------------------------------------------------------x
In re                                   :     Chapter 11
                                        :
S & K Famous Brands, Inc.,              :     Case No. 09-30805 (KRH)
                                        :
                    Debtor.             :
-------------------------------------------------------x
```

### FIRST MODIFIED PLAN OF LIQUIDATION UNDER CHAPTER 11
### OF THE BANKRUPTCY CODE PROPOSED BY DEBTOR
### AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS

**Nothing contained herein shall constitute an offer, acceptance or a legally binding obligation of the Debtor or any other party in interest and this Plan is subject to approval of the Bankruptcy Court and other customary conditions. This Plan is not an offer with respect to any securities. This is not a solicitation of acceptances or rejections of the Plan. Acceptances or rejections with respect to this Plan may not be solicited until a disclosure statement has been approved by the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division. Such a solicitation will only be made in compliance with applicable provisions of securities and/or bankruptcy laws. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE (INCLUDING IN CONNECTION WITH THE PURCHASE OR SALE OF THE DEBTOR'S SECURITIES) PRIOR TO THE APPROVAL OF THIS PLAN BY THE BANKRUPTCY COURT.**

Lynn L. Tavenner (VSB No. 30083)
Paula S. Beran (VSB No. 34679)
TAVENNER & BERAN, PLC
20 North 8th Street, Second Floor
Richmond, VA 23219
*Attorneys for the Debtor in Possession*

Jeffrey N. Pomerantz, Esq.
Shirley S. Cho, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd. 11th Floor
Los Angeles, CA 90067
*Attorneys for the Official Committee of Unsecured Creditors*

Paul K. Campsen (VSB No. 18133)
Dennis T. Lewandowski (VSB No. 22232)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
*Attorneys for the Official Committee of Unsecured Creditors*

**INTRODUCTION**

S & K Famous Brands, Inc., the debtor and debtor-in-possession in the above-captioned proceeding, and the Official Committee of Unsecured Creditors of S&K Famous Brands, Inc. propose the following Plan for the distribution of the proceeds of the liquidation of the Debtor's assets and the proceeds of Causes of Action and the resolution of the outstanding creditor Claims and Equity Interests in the Debtor. Reference is made to the Disclosure Statement for Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by Debtor and Official Committee of Unsecured Creditors, distributed contemporaneously with the Plan, for a discussion of: (i) the Debtor's history, business, property, and operations, (ii) a summary and analysis of the Plan; and (iii) certain related matters, including certain risk factors relating to the Plan. The Debtor and the Creditors' Committee are the Proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

The Plan is a liquidating plan. Pursuant to prior orders of the Bankruptcy Court, the Debtor has sold substantially all of its assets. The Plan provides for the distribution of certain proceeds from such sales and both the creation of a Liquidating Trust and the appointment of a Liquidating Trustee to liquidate any remaining assets, pursue Causes of Action not otherwise released, and distribute funds to the holders of Allowed Claims. The Plan also provides for the termination of all Equity Interests in the Debtor and the dissolution and wind-up of the affairs of the Debtor.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith, have been approved for use in soliciting acceptances and rejections of the Plan. Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to all holders of Claims and Equity Interests to the extent required by Bankruptcy Code section 1125.

All holders of Claims and all holders of Equity Interests are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions or modifications set forth in Article XI of the Plan, the Plan Proponents reserve the right to alter, amend, modify, revoke or withdraw the Plan prior to its substantial consummation.

**ARTICLE I**
**DEFINITIONS, RULES OF INTERPRETATION,**
**AND COMPUTATION OF TIME**

**1.1    Scope of Definitions; Rules of Construction.**

For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of the Plan. Any term that is not defined in the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. To the extent that there is an inconsistency between a definition in this Plan and a definition set forth in the Bankruptcy Code, the definition set forth herein shall

control.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### 1.2    Definitions.

1.2.1    "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to: (i) the actual necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (ii) all fees and charges assessed against the Estate under 28 U.S.C. § 1930; and (iii) all Professional Fee Claims (to the extent Allowed by Final Order) including any Section 503(b)(9) Claim.

1.2.2    "Administrative Claim Bar Date" means the date by which applications for payment of Administrative Claims (except for Section 503(b)(9) Claims) must be Filed pursuant to Section 13.1 of the Plan.

1.2.3    "Allowed" means a Claim that is not a Disputed Claim and: (i) as to which no objection to allowance or request for estimation has been interposed on or before the Claim Objection Deadline or the expiration of such other applicable period of limitation as may be fixed by the Bankruptcy Code, Bankruptcy Rules, or the Bankruptcy Court; (ii) as to which any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order; (iii) that has been allowed by a Final Order; (iv) as to which the liability of the Debtor, and the amount thereof, are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or (v) that is expressly allowed in a liquidated amount in the Plan.

1.2.4    "Asset" means, with respect to the Debtor, all of the right, title, and interest in and to property of whatever type or nature owned by the Debtor or subsequently acquired by the Debtor, including any property of the Estate contemplated under section 541 of the Bankruptcy Code (each such item of or interest in property being sometimes referred to herein as an Asset).  Asset shall also include any interest the Debtor may have in any retirement, employee benefit, pension plan, tax refund or similar claim, or any Cause of Action.

1.2.5    "Available Cash" means all Cash held by the Liquidating Trustee which, in consultation with the Oversight Committee, the Liquidating Trustee determines is available for distribution as of the date that is ten (10) Business Days prior to a Distribution Date.

1.2.6    "Avoidance Actions" mean Causes of Action arising under sections 502, 510, 541, 542, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, or under related or analogous state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

**1.2.7**    "Ballot" means each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote under Article IV of the Plan in connection with the solicitation of acceptances of the Plan.

**1.2.8**    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U. S. C. §§ 101-1532, as in effect as of the Petition Date.

**1.2.9**    "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Virginia (Richmond Division), which has jurisdiction over the Chapter 11 Case.

**1.2.10**    "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Chapter 11 Case and proceedings therein, and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Virginia, as now in effect or hereafter amended.

**1.2.11**    "Bar Date" means the General Bar Date and/or the Governmental Bar Date, as applicable.

**1.2.12**    "Board" means the Board of Directors of S&K Famous Brands, Inc. as of the date of the Confirmation Hearing.

**1.2.13**    "Business Day" means any day, other than a Saturday, Sunday, or Legal Holiday (as defined in Bankruptcy Rule 9006(a)).

**1.2.14**    "Case Interest Rate" means the federal judgment rate provided in 28 U.S.C. § 1961 in effect on the Petition Date.

**1.2.15**    "Cash" means legal tender of the United States of America or equivalents thereof.

**1.2.16**    "Causes of Action" means all claims, rights of action, choses in action, suits, or proceedings, accounts, controversies, agreements, promises, rights to payment and claims (as defined in Bankruptcy Code section 101(5)), whether in law or in equity, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, that the Debtor or its Estate may hold against any Person, including, but not limited to, Avoidance Actions and the Excluded Claims, and including, also, but not limited to, those listed in the Plan Supplement.

**1.2.17**    "Chapter 11 Case" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor, styled In re S & K Famous Brands, Inc., Case No. 09-30805-KRH, currently pending in the Bankruptcy Court.

**1.2.18**  "Chief Restructuring Officer" means Jonathan M. Tibus of Alvarez & Marsal North America, LLC, appointed as Chief Restructuring Officer of the Debtor by order of the Bankruptcy Court dated April 27, 2009.

**1.2.19**  "Claim" means a claim against the Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**1.2.20**  "Claim Objection Deadline" means, for all Claims (except as otherwise provided herein), the later of (i) ninety (90) days after the Effective Date or (ii) such other time as may be Ordered by the Bankruptcy Court on request of the Liquidating Trustee, Filed before such deadline, provided that any hearing on said motion is held on or before the date that is no more than thirty (30) days after the Claim Objection Deadline, unless the Bankruptcy Court orders otherwise.  The Filing of a motion to extend the Claim Objection Deadline shall automatically extend the Claim Objection Deadline until a Final Order is entered on such motion.  In the event that such motion to extend the Claim Objection Deadline is denied, the Claim Objection Deadline shall be the later of the current Claim Objection Deadline (as previously extended, if applicable) or 30 days after the Bankruptcy Court's entry of an order denying the motion to extend the Claim Objection Deadline.

**1.2.21**  "Claims Agent" means Kurtzman Carson Consultants, LLC.

**1.2.22**  "Claims Register" means the official register of claims maintained by the Claims Agent as of the Effective Date.

**1.2.23**  "Class" means a category of holders of Claims or Equity Interests, as described in Article II of the Plan.

**1.2.24**  "Collateral" means any property or interest in property of the Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not released pursuant to the Plan or subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

**1.2.25**  "Company" shall mean S&K Famous Brands, Inc.

**1.2.26**  "Confirmation" means entry by the Bankruptcy Court of the Confirmation Order.

**1.2.27**  "Confirmation Date" means the date of entry of the Confirmation Order by the Bankruptcy Court.

**1.2.28**  "Confirmation Hearing" means the hearing by the Bankruptcy Court to consider Confirmation of the Plan under section 1129 of the Bankruptcy Code.

**1.2.29**  "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.2.30**  "Convenience Claim" means a General Unsecured Claim: (i) equal to or less than $1,000; or (ii) greater than $1,000 if the holder of such General Unsecured Claim elects to reduce its claim to $1,000 and to be treated as a Class 5 Claim under the Plan by returning a Ballot indicating such election.

**1.2.31**  "Creditors' Committee" means the Official Committee of Unsecured Creditors of S&K Famous Brands, Inc., appointed by the United States Trustee pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Case on February 11, 2009 (Docket No. 66).

**1.2.32**  "Debtor" means S & K Famous Brands, Inc., in its capacity as a debtor and debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**1.2.33**  "DIP Financing Agreement" means that certain Debtor-In-Possession Credit Agreement dated as of February 9, 2009, between the Debtor and Wells Fargo, as agent, and the lenders party thereto from time to time approved by the DIP Loan Order.

**1.2.34**  "DIP Loan" means amounts owed (and/or previously owed) to Wells Fargo under and in connection with the DIP Financing Agreement.

**1.2.35**  "Disbursing Agent" means the Liquidating Trustee or any party designated by the Liquidating Trustee, in the Liquidating Trustee's sole discretion, to serve as a disbursing agent under the Plan.

**1.2.36**  "Disclosure Statement" means the disclosure statement relating to the Plan (including all exhibits and schedules thereto), as amended, supplemented or modified from time to time, and that is prepared and distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

**1.2.37**  "Disclosure Statement Hearing" means the hearing held by the Bankruptcy Court to approve the Disclosure Statement.

**1.2.38**  "Disclosure Statement Order" means the order entered by the Bankruptcy Court approving the Disclosure Statement.

**1.2.39**  "Disputed Claim" means a Claim, or any portion thereof, that has not been Allowed pursuant to the Plan or a Final Order, and:

a.    if no proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed pursuant to a Final Order of the Bankruptcy Court: (i) a Claim that is listed on a Debtor's Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtor, the Liquidating Trustee or, prior to the Effective Date, any other party-in-interest, has Filed an objection by the Claim Objection Deadline and such objection has not been withdrawn or denied by a Final Order; or (ii) a Claim that is listed on the Debtor's Schedules as disputed, contingent, or unliquidated;

6

b.       if a proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed pursuant to a Final Order of the Bankruptcy Court: (i) a Claim for which a corresponding Claim has been listed on the Schedules as unliquidated, contingent or disputed; (ii) a Claim for which a corresponding Claim has been listed on the Schedules as other than unliquidated, contingent or disputed, but the amount of such Claim as asserted in the Claim varies from the amount of such Claim as listed in the Schedules; or (iii) a Claim as to which any party in interest has timely Filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or which is otherwise disputed by a Debtor and/or the Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn, or determined by a Final Order; or

c.       if a request for payment of an Administrative Claim has been Filed by the Administrative Claim Bar Date or has otherwise been deemed timely Filed pursuant to a Final Order of the Bankruptcy Court, a Claim for which an objection has been Filed by the Liquidating Trustee on or before the Claim Objection Deadline, and such objection has not been withdrawn or denied by a Final Order.

**1.2.40**  "Disputed Claim Amount" means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim (i) the liquidated amount set forth in the Proof of Claim relating to the Disputed Claim; (ii) an amount agreed to by the Proponents or the Liquidating Trustee and the holder of such Disputed Claim; or (iii) if a request for estimation is filed by any party, the amount at which such Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Proponents or the Liquidating Trustee and the holder of such Disputed Claim or (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim; or (c) if the Claim was listed on the Schedules as unliquidated, contingent, or disputed and no Proof of Claim was filed, or deemed to have been filed, by the applicable Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, zero.

**1.2.41**  "Distribution" means any payment required to be made to the holder of an Allowed Claim under the terms of the Plan.

**1.2.42**  "Distribution Date" means either the Initial Distribution Date or a Periodic Distribution Date.

**1.2.43**   "Effective Date" means the Business Day on which this Plan becomes effective as provided in Article IX of the Plan.

**1.2.44**  "Equity Interest" means the legal, equitable, contractual, and other rights of any Person with respect to any capital stock or other ownership interest in the Debtor, whether or not transferable, and all options, warrants, call rights, puts, awards, or rights or agreements to purchase, sell, or subscribe for an ownership interest or other equity security in the Debtor.

**1.2.45**  "Estate" means the estate of the Debtor in the Chapter 11 Case created pursuant to section 541 of the Bankruptcy Code.

7

**1.2.46**  "Estate Claim" means any claim or counterclaim held by the Estate against the holder of a Claim.

**1.2.47**  "Excluded Claims" means Causes of Action held by the Debtor or the Estate against a member or members of the Board or any present or past officers or directors of the Debtor (in each case, in such capacity only) arising out of or related to any acts, omissions, or breach of fiduciary duties owed to the Company with respect to either: (i) the cash dividend paid by the Company to its shareholders on or about April 7, 2006; or (ii) the Company's prepetition repurchases of its stock.

**1.2.48**  "Excluded Claims Deadline" means January 30, 2011, the deadline for the Releasing Parties to File any complaint asserting any Causes of Action on account of the Excluded Claims, after which  any and all such Causes of Action which were not Filed by such date shall be forever and irrevocably time-barred, released, and discharged.

**1.2.49**  "Face Amount" means (a) when used in reference to a Disputed Claim, the Disputed Claim Amount and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

**1.2.50**  "File," "Filed" or "Filing" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

**1.2.51**  "Final Decree" means an order entered by the Bankruptcy Court closing the Chapter 11 Case after satisfaction of all obligations and duties under the Plan.

**1.2.52**  "Final Order" means an order or judgment of the Bankruptcy Court entered on the docket in the Chapter 11 Case, which order has not been reversed, vacated or stayed and as to which the time to appeal, petition for certiorari, or other reargument, or rehearing has expired and as to which no appeal, petition for certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules, may be Filed relating to such order shall not cause such order to not be a Final Order.

**1.2.53**  "General Bar Date" means April 27, 2009, the date designated by the Bankruptcy Court as the last date for Filing proofs of Claim arising prior to the Petition Date against the Debtor by all Persons other than Governmental Units.

**1.2.54**  "General Unsecured Claim" means any Claim arising prior to the Petition Date against the Debtor, other than an Administrative Claim, a Professional Fee Claim, Priority Tax Claim, Secured Claim, Other Priority Claim, Convenience Claim, or Equity Interest.

**1.2.55**  "Governmental Bar Date" means August 8, 2009, the bar date for Governmental Units to File Proofs of Claim for Claims arising prior to the Petition Date against the Debtor.

**1.2.56**  "Initial Class 4 Distribution Amount" means the amount of Available Cash and/or other consideration, including proceeds from any Causes of Action, to which holders of Allowed General Unsecured Claims are entitled under this Plan as of the Initial Distribution Date.

**1.2.57**  "Initial Distribution Date" means the first Distribution Date, which shall occur as soon as practicable after the first Business Day which is thirty (30) days after the Effective Date, provided that the conditions set forth in the Plan to making such Distribution have been satisfied before such date.

**1.2.58**  "Interim Compensation Procedures Order" refers to the Order Granting Motion of the Debtor Pursuant to Bankruptcy Code Sections 105(a) and 331 Establishing Interim Compensation Procedures, entered by the Bankruptcy Court in the Chapter 11 Case on March 6, 2009 (Docket No. 214).

**1.2.59**  "Lien" means a lien, security interest, mortgage, deed of trust, or other charge or encumbrance on or in any real or personal property to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

**1.2.60**  "Liquidate" and/or "Liquidation" means the method or manner by which the Assets of the Debtor are converted to Cash.

**1.2.61**  "Liquidating Trust" means the trust formed pursuant to the Liquidating Trust Agreement and the Plan which shall be funded in accordance with Article VI of the Plan.

**1.2.62**  "Liquidating Trust Agreement" means the S&K Famous Brands, Inc. Liquidating Trust Agreement attached to the Plan Supplement.

**1.2.63**  "Liquidating Trustee" shall mean KDW Restructuring & Liquidation Services, LLC or any successor thereto as outlined in Section 6.10 of the Plan.

**1.2.64**  "Liquidating Trust Expenses" means the actual, necessary and reasonable costs and expenses of preserving, administering, distributing, and, if necessary, converting to cash any assets held by the Liquidating Trustee pursuant to the Plan, including, without limitation, the following:

 (a) compensation and expenses of the Liquidating Trustee;

 (b) compensation and expenses of any counsel, accountants, or other professionals, or agents employed by the Liquidating Trustee, subject to review for reasonableness by the Oversight Committee;

(c)      all taxes of any kind or nature incurred with respect to the assets held by the Liquidating Trustee or income therefrom or upon sale thereof;

(d)      the necessary and reasonable costs and expenses incurred by the Liquidating Trustee after the Effective Date in administering the Plan, the claims resolution process and in pursuing causes of action for the benefit of the Liquidating Trust, including the reasonable fees and expenses of counsel to the Liquidating Trustee in such matters; and

(e)      quarterly fees payable pursuant to 28 U.S.C. § 1930(a)(6).

**1.2.65**  "Other Priority Claim" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code other than a Priority Tax Claim, an Administrative Claim, or a Professional Fee Claim.

**1.2.66**  "Oversight Committee" means a committee composed of three (3) members (two (2) of which shall be appointed by the Creditors' Committee and one (1) of which shall be appointed by the Debtor) established to advise and assist the Liquidating Trustee in the administration of the Liquidating Trust pursuant to the Liquidating Trust Agreement.

**1.2.67**  "Perfected Consignment Claim" mean any Claim arising before the Petition Date out of the sale or delivery of goods pursuant to any consignment or similar arrangement with the Debtor where the party asserting such Claim has taken all steps required under applicable law to establish such party's right as a consignor of goods to the Debtor as determined by Final Order of the Bankruptcy Court.

**1.2.68**  "Periodic Class 4 Distribution Amount" means, with respect to each Periodic Distribution Date, the amount of Available Cash and/or other consideration, including proceeds from the Causes of Action, to which holders of Allowed General Unsecured Claims are entitled under this Plan.

**1.2.69**  "Periodic Distribution Date" means a Distribution Date after the Initial Distribution Date which shall occur on: (i) the first Business Day occurring ninety (90) days after the immediately preceding Distribution Date or (ii) such other Business Day as determined in the reasonable discretion of the Liquidating Trustee.

**1.2.70**  "Person" means any individual, corporation, partnership, limited liability partnership, association, limited liability company, organization, joint stock company, joint venture, estate, trust, governmental unit or any subdivision thereof, official or unofficial committee, and any other entity.

**1.2.71**  "Petition Date" means February 9, 2009, the date on which the Debtor Filed its petition for relief with the Bankruptcy Court, commencing the Chapter 11 Case.

**1.2.72**  "Plan" means this Chapter 11 plan of liquidation for the Debtor and all exhibits annexed hereto or referenced herein, as the same may be amended, modified, or supplemented from time to time.

**1.2.73** "Plan Supplement" means and includes such other agreements, instruments and documents as may be required to effectuate the terms of the Plan.

**1.2.74** "Priority Tax Claim" means a Claim that is entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.2.75** "Professional" means any professional employed in the Chapter 11 Case pursuant to sections 327, 328 or 1103 of the Bankruptcy Code.

**1.2.76** "Professional Fee Claim" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date.

**1.2.77** "Proponents" means the Debtor and the Creditors' Committee.

**1.2.78** "Pro Rata" means, at any time, the proportion that the face amount of an Allowed Claim in a particular Class bears to the aggregate face amount of all Claims (including Disputed Claims) in such Class, unless the Plan provides otherwise.

**1.2.79** "Recipient Claims" means Causes of Action held by the Debtor or the Estate against a prepetition shareholder of the Debtor (or an "insider" of such shareholder, as defined in Bankruptcy Code section 101(31), as if such shareholder were a "debtor" for the purposes of that section) to recover a transfer or transfers made by the Company prepetition to such persons, pursuant to applicable law, including, without limitation, Avoidance Actions.

**1.2.80** "Rejection Claim" means a Claim arising from the rejection of an executory contract or unexpired lease of real or personal property pursuant to section 365 of the Bankruptcy Code.

**1.2.81** "Released Parties" means all directors and officers of the Debtor which served in any such capacity postpetition, current management of the Debtor, and the Creditors' Committee (and all subsidiaries and affiliates and officers, directors, partners, members, attorneys, financial advisors, investment bankers and other professionals, and agents of each of the foregoing and of the Debtor).

**1.2.82** "Releasing Parties" means the Debtor, the Estate and the Liquidating Trust, each on behalf of itself and its successors and/or assigns.

**1.2.83** "Schedules" means the Schedules of Assets and Liabilities and the Statements of Financial Affairs that the Debtor Filed with the Bankruptcy Court on March 11, 2009 (Docket Nos. 230-234), as may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or by order of the Bankruptcy Court.

**1.2.84** "Secured Claim" means a Claim that is secured by a Lien upon property, or the proceeds of the sale of such property, in which the Debtor has an interest, to the extent of the value, as of the Effective Date or such later date as is established by the Bankruptcy Court, of such Lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the

Bankruptcy Code or as otherwise agreed upon in writing by the Debtor or the Liquidating
Trustee and the holder of such Claim.

   **1.2.85** "Section 503(b)(9) Claim" means each Claim asserted against the Debtor
pursuant to Bankruptcy Code section 503(b)(9).

   **1.2.86** "Subordinated Claim" means: (i) any Claim subordinated pursuant to
Bankruptcy Code section 510(b), which shall include any Claim arising from the rescission of a
purchase or sale of any Equity Interest, any Claim for damages arising from the purchase or sale
of any Equity Interest, or any Claim for reimbursement, contribution or indemnification on
account of any such Claim; or (ii) any Claim subordinated pursuant to Bankruptcy Code section
510(c), or for punitive or exemplary damages or for a fine or penalty, to the extent permitted by
applicable law.

   **1.2.87** "U.S. Trustee" means the Office of the United States Trustee for the
Eastern District of Virginia, Richmond Division.

   **1.2.88** "Wells Fargo" means Wells Fargo Retail Finance, LLC, its successors and
assigns, as agent for certain lenders as provided in the DIP Financing Agreement.

   **1.2.89** "Wells Fargo Prepetition Loan" means the amounts owed to Wells Fargo
for advances made by Wells Fargo to the Debtor pursuant to a Loan and Security Agreement
dated as of April 30, 2008, by and between the Debtor and Wells Fargo and other lenders.

   **1.3**  **Rules of Interpretation.**

   For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release,
or other agreement or document being in a particular form or on particular terms and conditions
means that such document shall be substantially in such form or substantially on such terms and
conditions; (b) any reference in the Plan to an existing document or exhibit Filed or to be Filed
means such document or exhibit as it may have been or may be amended, modified or
supplemented; (c) unless otherwise specified, all references in the Plan to Sections, Articles,
Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the
Plan; (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a
particular portion of the Plan; (e) captions and headings to Articles and Sections are inserted for
convenience of reference only and are not intended to be a part of or to affect the interpretation
of the Plan; and (f) the rules of construction set forth in section 102 of the Bankruptcy Code and
in the Bankruptcy Rules shall apply.

   **1.4**  **Computation of Time.**

   In computing any period of time prescribed or allowed by the Plan, the provisions of
Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1**    **Introduction.**

As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified for the purposes of voting on, or receiving Distributions under, the Plan. All such Claims are instead treated separately in accordance with the terms set forth in the Plan.

**2.2**    **Administrative Claims.**

Except as otherwise provided for in the Plan, on, or as soon as reasonably practicable after, the first Business Day that is thirty (30) days after the date that an Administrative Claim becomes an Allowed Administrative Claim, the holder of such Allowed Administrative Claim shall receive from the Liquidating Trustee, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Administrative Claim: (1) Cash equal to the unpaid portion of such Allowed Administrative Claim; or (2) such other treatment as to which the Liquidating Trustee and such holder shall have agreed upon in writing. Also, on the Effective Date or as soon thereafter as is practicable, the Debtor shall pay or have paid in Cash in full all Allowed Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930 and fees payable to the Bankruptcy Court, which are due and payable on or before the Effective Date. All fees payable pursuant to 28 U.S.C. § 1930 after the Effective Date shall be paid by the Liquidating Trustee solely from the Assets of the Liquidating Trust. Notwithstanding the foregoing, or anything to the contrary in the Plan, no Distributions shall be made to the holder of any Allowed Administrative Claim unless either (a) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Administrative Claims or (b) the Oversight Committee consents to all or any portion of such Distribution.

**2.3**    **Priority Tax Claims.**

Except as otherwise provided for in the Plan, on, or as soon as reasonably practicable after, the first Business Day that is thirty (30) days after the date that a Priority Tax Claim becomes an Allowed Priority Tax Claim, the holder of such Allowed Priority Tax Claim shall receive from the Liquidating Trustee, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim: (1) Cash equal to the unpaid portion of such Allowed Priority Tax Claim; or (2) such other treatment as to which the Liquidating Trustee and such holder shall have agreed upon in writing. Notwithstanding the foregoing, or anything to the contrary in the Plan, no Distributions shall be made to the holder of any Allowed Priority Tax Claim unless (a) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Administrative Claims; and (b) either (i) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Priority Tax Claims or (ii) the Oversight Committee consents to all or any portion of such Distribution.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1    Introduction.**

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is placed in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

**3.2    Classification of Claims and Equity Interests.**

Claims, other than Administrative Claims and Priority Tax Claims, shall be classified for all purposes, including voting on, Confirmation of, and distribution pursuant to the Plan, as follows:

Class 1—Secured Claims.  Class 1 shall consist of all Allowed Secured Claims.

Class 2— Perfected Consignment Claims.  Class 2 shall consist of all Allowed Perfected Consignment Claims.   If a Claim arises out of the alleged sale or delivery of goods pursuant to any consignment or similar arrangement with the Debtor but does not constitute a Perfected Consignment Claim, then such Claim shall be deemed a General Unsecured Claim and shall be treated as a Class 4 Claim.

Class 3—Other Priority Claims.  Class 3 shall consist of all Allowed Other Priority Claims.

Class 4—General Unsecured Claims.  Class 4 shall consist of all Allowed General Unsecured Claims other than Convenience Claims.

Class 5—Convenience Claims.  Class 5 shall consist of all Allowed Convenience Claims.

Class 6—Subordinated Claims.  Class 6 shall consist of all Subordinated Claims.

Class 7—Equity Interests.  Class 7 shall consist of all Equity Interests.

**ARTICLE IV**
**TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

**4.1    Class 1:  Secured Claims.**

(A)    Impairment and Voting.  Class 1 is unimpaired under the Plan.  Each holder of an Allowed Secured Claim in Class 1 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(B)    Subclassification.  Each Allowed Secured Claim in this Class shall constitute a separate Class.

14

(C)    Distributions.  Except as otherwise provided in the Plan, on, or as soon as reasonably practicable after, the first Business Day that is thirty (30) days after the date that a Secured Claim becomes an Allowed Secured Claim, the holder of such Allowed Secured Claim shall receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Secured Claim, one of the following at the option of the Liquidating Trustee: (1) Cash equal to the value of such holder's Allowed Secured Claim; (2) return of the Collateral securing the holder's Allowed Secured Claim, or the proceeds thereof; or (3) such other treatment as to which such holder and the Liquidating Trustee agree in writing.  Notwithstanding the foregoing, or anything to the contrary in the Plan, no Distributions shall be made to the holder of any Allowed Secured Claim unless either (a) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Administrative Claims and Secured Claims or (b) the Oversight Committee consents to all or any portion of such Distribution.

**4.2    Class 2:  Perfected Consignment Claims.**

(A)    Impairment and Voting.  Class 2 is unimpaired under the Plan.  Each holder of an Allowed Perfected Consignment Claim in Class 2 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(B)    Distributions.  Except as otherwise provided in the Plan, on, or as soon as reasonably practicable after, the first Business Day that is thirty (30) days after the date that a Perfected Consignment Claim becomes an Allowed Perfected Consignment Claim, the holder of such Allowed Perfected Consignment Claim shall receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Perfected Consignment Claim, one of the following at the option of the Liquidating Trustee: (1) Cash in an amount equal to such Allowed Perfected Consignment Claim; (2) return of the goods that are subject to the Allowed Perfected Consignment Claim, or the proceeds thereof; or (3) such other treatment as to which such holder and the Liquidating Trustee agree in writing.  Notwithstanding the foregoing, or anything to the contrary in the Plan, no Distributions shall be made to the holder of any Allowed Perfected Consignment Claim unless either (a) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Administrative Claims and Perfected Consignment Claims or (b) the Oversight Committee consents to all or any portion of such Distribution.

**4.3    Class 3:  Other Priority Claims.**

(A)    Impairment and Voting.  Class 3 is unimpaired under the Plan.  Each holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(B)    Distributions.  Except as otherwise provided in the Plan, on, or as soon as reasonably practicable after, the first Business Day that is thirty (30) days after the date that an Other Priority Claim becomes an Allowed Other Priority Claim, the holder of such Allowed Other Priority Claim shall receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Other Priority Claim: (1) Cash in an amount equal to such Allowed Other Priority Claim, or (2) such other treatment as to which such holder and the Liquidating

Trustee agree in writing.  Notwithstanding the foregoing, or anything to the contrary in the Plan, no Distributions shall be made to the holder of any Allowed Other Priority Claim unless (a) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Administrative Claims; and (b) either (i) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Other Priority Claims or (ii) the Oversight Committee consents to all or any portion of such Distribution.

**4.4**      **Class 4:  General Unsecured Claims.**

(A)      Impairment and Voting.  Class 4 is impaired under the Plan.  Each holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(B)      Distributions.  Provided that the Face Amount of all Administrative Claims, Priority Tax Claims, Secured Claims, Perfected Consignment Claims, and Other Priority Claims have been paid in full or, to the extent not paid in full, funds sufficient to satisfy the Face Amount of all such Claims have been placed in a segregated reserve, and subject to the occurrence of the Effective Date, on, or as soon as reasonably practicable after, the Initial Distribution Date, the holder of an Allowed General Unsecured Claim shall receive from the Liquidating Trustee the Pro Rata share of the Initial Class 4 Distribution Amount attributable to such Claim.  On each subsequent Distribution Date, each holder of an Allowed General Unsecured Claim shall receive the Pro Rata share of the Periodic Class 4 Distribution Amount attributable to such Claim.  The proposed treatment described in this section of the Plan shall be in full and final satisfaction, settlement, and release of and in exchange for such Allowed General Unsecured Claim.  To the extent a Claim is not Allowed until after either the Initial Distribution Date, or the Periodic Distribution Date, as the case may be, a "catch up" payment shall be made as provided in section 7.1(c) of the Plan.

**4.5**      **Class 5:  Convenience Claims.**

(A)      Impairment and Voting.  Class 5 is impaired under the Plan.  Each holder of an Allowed Claim in Class 5 is entitled to vote to accept or reject the Plan.

(B)      Distributions.  Provided that the Face Amount of all Administrative Claims, Priority Tax Claims, Secured Claims, Perfected Consignment Claims, and Other Priority Claims have been paid in full or, to the extent not paid in full, funds sufficient to satisfy the Face Amount of all such Claims have been placed in a segregated reserve, and subject to the occurrence of the Effective Date and subject to section 6.12(e) of the Plan, on, or as soon as reasonably practicable after, the first Business Day that is thirty (30) days after the date that a Convenience Claim becomes an Allowed Convenience Claim, each holder of an Allowed Convenience Claim shall receive a one-time Cash distribution from the Liquidating Trust in an amount equal to ten (10%) percent of such Allowed Convenience Claim.  The proposed treatment described in this section of the Plan shall be in full and final satisfaction, settlement, and release of and in exchange for such Allowed Convenience Claim, and the holder receiving this one time Distribution will not be entitled to receive any other distributions on account of such Allowed Convenience Claim.

**4.6    Class 6:  Subordinated Claims.**

(A)    <u>Impairment and Voting</u>.  Class 6 is impaired under the Plan.  Each holder of a Subordinated Claim shall be deemed to have rejected the Plan.

(B)    <u>Distributions</u>.  On the Effective Date, all Subordinated Claims shall be deemed eliminated, cancelled and/or extinguished, and each Person holding a Subordinated Claim in Class 6 shall neither receive nor retain any property or interest in property on account of such Subordinated Claim.

**4.7    Class 7: Equity Interests.**

(A)    <u>Impairment and Voting</u>.  Class 7 is impaired under the Plan.  Each holder of an Equity Interest shall be deemed to have rejected the Plan.

(B)    <u>Distributions</u>.  On the Effective Date, all Equity Interests shall be cancelled and extinguished, and each Person holding an Equity Interest in Class 7 shall neither receive nor retain any property or interest in property on account of such Equity Interest.

**ARTICLE V**
**DISTRIBUTIONS**

**5.1    Distributions for Claims Allowed as of the Effective Date.**

Except as otherwise provided herein, or as ordered by the Bankruptcy Court, all Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on, or as soon as reasonably practicable after, the Initial Distribution Date by the Liquidating Trustee pursuant to the terms and conditions of this Plan.  Notwithstanding any other provision of the Plan to the contrary, no Distribution shall be made on account of any Allowed Claim or portion thereof that: (i) has been satisfied after the Petition Date pursuant to an order of the Bankruptcy Court; (ii) is listed in the Schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely Filed; or (iii) is evidenced by a Proof of Claim that has been amended by a subsequently Filed Proof of Claim that purports to amend the prior Proof of Claim.

**5.2    Liquidating Trustee as Disbursing Agent.**

The Liquidating Trustee shall make all Distributions required under this Plan, subject to the terms and provisions of this Plan and the Liquidating Trust Agreement.  The Liquidating Trustee shall be required to post a bond or surety or other security for the performance of the Liquidating Trustee's duties in an amount set forth in the Confirmation Order.  The Liquidating Trustee shall be authorized and directed to rely upon the Debtor's books and records in determining Allowed Claims not entitled to Distribution under the Plan in accordance with the terms of the Plan.

## ARTICLE VI
## MEANS OF IMPLEMENTING THE PLAN

**6.1    Implementation on the Effective Date.**

The Plan shall become effective on the Effective Date.

**6.2    Corporate Action.**

(A)    Transfer of Estate Assets.

Upon the Effective Date: (i) the members of the Board and the officers of the Debtor shall be deemed to have resigned, and (ii) the Debtor shall cause all its Assets and the Assets of its Estate to be transferred to the Liquidating Trust in accordance with this Plan, which transfer shall include, but not be limited to, all of the Debtor's and the Estate's rights, claims and defenses with respect to any Cause of Action, including, without limitation, the right to commence, prosecute, settle, abandon and/or release any Avoidance Actions.  Upon transfer of the Assets, the Debtor shall have no further duties or responsibilities in connection with the implementation of the Plan.

(B)    Dissolution of the Debtor.

As soon as practicable after the transfer of Assets to the Liquidating Trust, the Liquidating Trustee shall: (i) provide for the retention and storage of the books and records, and files that shall have been delivered to the Liquidating Trust until such time as all such books, records and files are no longer required to be retained under applicable law, and file a certificate informing the Bankruptcy Court of the location at which such books, records, and files are being stored, and (ii) file the necessary paperwork to effectuate the dissolution of the Debtor in accordance with applicable law.

(C)    Cancellation of Existing Securities and Agreements.

Except as otherwise provided in the Plan, and in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, the Equity Interests and any other promissory notes, share certificates, whether for preferred or common stock (including treasury stock), other instruments evidencing any Claims or Equity Interests, and all options, warrants, calls, rights, puts, awards and commitments shall be deemed cancelled and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtor under the notes, share certificates, and other agreements and instruments governing such Claims and Equity Interests shall be released.  The holders of or parties to such cancelled notes, share certificates and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to the Plan.

**6.3** **Legal Representation of the Debtor and the Creditors' Committee After the Effective Date.**

Upon the Effective Date, the attorney-client relationship between the Debtor and its current counsel, including, without limitation, Tavenner & Beran, P.C. and McGuireWoods LLP, and between the Creditors' Committee and its current counsel, Pachulski, Stang, Ziehl & Jones LLP and Kaufman & Canoles, P.C., shall be deemed terminated.

**6.4** **Sources for Plan Distributions.**

All Cash necessary for the Liquidating Trustee to make payments of Cash pursuant to the Plan shall be obtained from the following sources: (i) the Debtor's Cash on hand as of the Effective Date which shall be transferred to the Liquidating Trust on the Effective Date, (ii) Cash received by the Liquidating Trustee from the liquidation of the Assets of the Debtor transferred to the Liquidating Trust on the Effective Date, and (iii) proceeds of the Causes of Action.

**6.5** **Preservation of Causes of Action; Settlement of Claims and Releases.**

(A)    Preservation of Causes of Action by the Debtor.

Upon the Effective Date, the Liquidating Trustee shall be deemed to be a representative of the Debtor as the party in interest in the Chapter 11 Case, under the Plan or in any judicial proceeding or appeal as to which the Debtor is a party, consistent with section 1123(b)(3) of the Bankruptcy Code or any corresponding provision of similar federal or state laws. Except as expressly provided herein, and unless expressly waived, relinquished, exculpated, released, assigned, compromised or settled in the Plan, the Confirmation Order, any Final Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, the Liquidating Trustee will exclusively retain and may enforce, and the Debtor expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, any claims, demands, rights and Causes of Action that the Debtor or the Estate may hold against any person or entity, including Avoidance Actions which include, but are not limited to, those Causes of Action identified in the Plan Supplement.  Accordingly, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action by virtue of or in connection with the Confirmation or consummation of effectiveness of the Plan.  Pursuant to the terms of the Liquidating Trust Agreement and this Plan, the Liquidating Trustee or his respective successors and assigns exclusively may pursue, settle, release, abandon, waive or compromise such retained claims, demands, rights or Causes of Action.

The Proponents have not concluded their investigation into the Causes of Action. Accordingly, in considering the Plan, each party in interest should understand that, except as otherwise provided in the Plan, any and all Causes of Action that may exist against such Person or entity may be pursued by the Liquidating Trust, regardless of whether, or the manner in which, such Causes of Action identified in the Plan Supplement or described herein.  The failure of the Proponents to list a claim, right, Cause of Action, suit or proceeding identified in the Plan

Supplement shall not constitute a waiver or release by the Debtor, its Estate, or the Liquidating Trustee of such claim, right of action, suit or proceeding.

           (B)       <u>Comprehensive Settlement of Claims and Controversies.</u>

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan, including the releases set forth herein, shall constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest or any Distribution to be made pursuant to the Plan on account of any Allowed Claim.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtor, the Estate and holders of Claims and Equity Interests, and is fair, equitable and reasonable.

### 6.6     <u>Execution of the Liquidating Trust Agreement; Appointment of Oversight Committee.</u>

Upon the Effective Date, the Liquidating Trustee and the Debtor on behalf of itself and the Estate will execute the Liquidating Trust Agreement.  The Liquidating Trust Agreement shall establish an Oversight Committee to advise the Liquidating Trustee as to certain matters affecting the administration of the Liquidating Trust and shall have the powers set forth in this Plan and the Liquidating Trust Agreement.  The Liquidating Trustee will report to the Oversight Committee and seek the consent of the Oversight Committee on the Liquidating Trustee's actions with respect to the Liquidating Trust, as and to the extent required by the provisions of the Plan, the Confirmation Order, and the Liquidating Trust Agreement.  The Liquidating Trust Agreement shall govern changes in the composition of the Oversight Committee and other matters related to the role, responsibilities and governance of the Oversight Committee.

### 6.7     <u>Appointment of Liquidating Trustee; Duties and Responsibilities.</u>

The Liquidating Trust, acting through the Liquidating Trustee under the supervision and direction of the Oversight Committee, subject to the terms of the Plan and the Liquidating Trust Agreement, shall be authorized to exercise and perform the rights, powers and duties held by the Estate, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, to provide for the prosecution, settlement, adjustment, retention and enforcement of claims and interests of the Estate, including, but not limited to, the Causes of Action and the authority to exercise all rights and powers under sections 506(c), 544-551, 1106, 1107 and 1108 of the Bankruptcy Code.  The Liquidating Trustee shall have the powers, duties, and obligations set forth in the Liquidating Trust Agreement.  Subject to the terms of the Liquidating Trust Agreement, which shall include, among other things, limitations on the Liquidating Trustee's discretion to take certain actions without approval of the Oversight  Committee, these duties, responsibilities and obligations include, but are not limited to, the following:

           (A)      prosecuting and resolving both objections to Claims and Causes of Action held by the Debtor (including, without limitation, Avoidance Actions, if any);

(B)    opening, maintaining, and administering bank accounts as necessary to discharge the duties of the Liquidating Trustee under the Plan and the Liquidating Trust Agreement, upon consultation with the Oversight Committee;

(C)    representing the Estate before the Bankruptcy Court and other courts of competent jurisdiction with respect to matters concerning the Liquidating Trust;

(D)    seeking the examination of any entity under and subject to the provisions on Bankruptcy Rule 2004;

(E)    liquidating or otherwise disposing of Estate Assets;

(F)    administering the Liquidating Trust and making appropriate distributions therefrom,

(G)    distributing the proceeds of Avoidance Actions, if any;

(H)    paying any and all post-Effective Date fees due to the U.S. Trustee;

(I)    Filing status reports with the Bankruptcy Court or other parties-in-interest on a quarterly basis including a summary of any disbursements or receipts;

(J)    exercising such other powers as may be vested in the Liquidating Trust pursuant to the Liquidating Trust Agreement, the Plan, or other Final Orders of the Bankruptcy Court;

(K)    executing any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Liquidating Trust;

(L)    standing in the shoes of the Debtor for all purposes;

(M)    filing tax returns and prosecuting tax refund claims with all applicable governmental entities on the Debtor's behalf;

(N)    taking all steps required to dissolve the Debtor under applicable law; and

(O)    as soon as practicable, obtaining a final decree closing the Debtor's Chapter 11 Case.

**6.8    Retention of Professionals.**

Subject to the terms of the Liquidating Trust Agreement and this Plan, the Liquidating Trustee may retain such attorneys (including special counsel), accountants, advisors, expert witnesses, and other professionals as the Liquidating Trustee deems appropriate without necessity of approval of the Bankruptcy Court, but subject to review for reasonableness of fees and expenses by the Oversight Committee.  Persons who served as Professionals to the Creditors' Committee or the Debtor prior to the Effective Date may serve the Liquidating Trustee on his request.  The fees and expenses of the Liquidating Trustee, the Oversight

Committee, and professionals retained by the Liquidating Trustee shall be paid by the Liquidating Trustee in the ordinary course from amounts held in the Liquidating Trust, without the necessity of Bankruptcy Court approval, except as provided in the Liquidating Trust Agreement.

**6.9     Exculpation and Indemnification.**

Neither the Liquidating Trustee nor the members of the Oversight Committee, nor the firms or corporations representing the Liquidating Trustee, or any of his employees, professionals or agents, shall in any way be liable for any acts of the Liquidating Trustee, the Oversight Committee, or any of the Liquidating Trustee's employees, professionals or agents, (except for acts undertaken with gross negligence or willful misconduct) in the performance of their respective duties.  The members of the Oversight Committee, the Liquidating Trustee, and his employees, professionals and agents shall be indemnified by the Liquidating Trust from and against any and all liabilities, expenses, claims, damages or losses incurred by them as a direct result of acts or omissions taken by any of them in good faith under the Plan and/or the Liquidating Trust Agreement.  In connection with carrying out his duties under the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall be entitled to rely on the advice of counsel and his other retained professionals.

**6.10     Removal of Liquidating Trustee.**

Pursuant to the Plan and the Liquidating Trust Agreement, the Liquidating Trustee may be removed only for cause upon motion to the Bankruptcy Court by a party-in-interest.  If the Liquidating Trustee is removed for cause, such Liquidating Trustee shall not be entitled to any accrued but unpaid fees, reimbursements or other compensation under the Plan, the Liquidating Trust Agreement, or otherwise.  Under the Plan and the Liquidating Trust Agreement, the term "cause" shall mean: (a) the Liquidating Trustee's gross negligence or willful failure to perform any applicable duty under the Liquidating Trust Agreement; (b) the Liquidating Trustee's misappropriation or embezzlement of any assets belonging to the Liquidating Trust or the proceeds thereof; or (c) the Liquidating Trustee's continued or repeated negligence or failure to perform any applicable duty under the Plan or the Liquidating Trust Agreement.  If the Liquidating Trustee is unwilling or unable to serve by virtue of his inability to perform his duties under the Liquidating Trust Agreement due to death, illness, or other physical or mental disability, subject to a final accounting, such Liquidating Trustee shall be entitled to all accrued and unpaid fees, reimbursements, and other compensation, to the extent incurred or arising or relating to events occurring before his removal, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Liquidating Trustee; provided, however, that if a motion is Filed with the Bankruptcy Court seeking the removal of the Liquidating Trustee for "cause" and such motion is granted, then at the time of the Liquidating Trustee's removal, the Bankruptcy Court shall determine the appropriate amount of fees and expenses owed to the Liquidating Trustee.

**6.11     Duration of Trust.**

The Liquidating Trust shall have an initial term of five (5) years, provided that, if warranted by the facts and circumstances, and subject to the approval of the Bankruptcy Court,

upon a finding that an extension of the term of the Liquidating Trust is necessary to accomplish the liquidation purpose of the Liquidating Trust, the Liquidating Trust's term may be extended for a finite term based on facts and circumstances. Each extension of the term of the Liquidating Trust is required to be approved by the Court within 6 months of the beginning of the extended term. The Liquidating Trust may be terminated earlier than its scheduled termination if both: (a) the Bankruptcy Court has entered a Final Order closing the Chapter 11 Case pursuant to Bankruptcy Code section 350, and (b) the Liquidating Trustee has administered all assets of the Liquidating Trust and performed all other duties required by the Plan and the Liquidating Trust Agreement. As soon as practicable after all assets of the Liquidating Trust have been distributed, the Liquidating Trustee shall seek entry of a Final Order closing the Chapter 11 Case pursuant to Bankruptcy Code section 350.

**6.12    Distributions.**

(A)    Delivery of Distributions. Distributions, deliveries, and any notice to holders of Allowed Claims will be made: (i) at the addresses set forth in any proof of claim Filed by the holder of such Allowed Claims or, if none, at the address set forth in the Debtor's Schedules; (ii) at the addresses set forth in any written notices of address changes delivered to and received by the Liquidating Trustee after the Effective Date; or (iii) at the option of the Liquidating Trustee, to counsel of record for the holder of any Allowed Claim.

(B)    Undeliverable Distributions. If the Distribution to any holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such holder unless and until the Liquidating Trustee is notified in writing of such holder's then-current address, at which time all missed Distributions shall be made to such holder without interest so long as the Claim for undeliverable Distributions is asserted on or within ninety (90) days after the final Periodic Distribution Date. Amounts in respect of undeliverable Distributions made by the Liquidating Trustee shall be returned to the Liquidating Trustee until such Distributions are claimed. The Liquidating Trustee shall segregate and, with respect to Cash, deposit in a segregated account undeliverable and unclaimed Distributions for the benefit of all such similarly situated Persons or Governmental Units until such time as a Distribution becomes deliverable or is claimed. Any holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed Distribution on or within ninety (90) days after the final Periodic Distribution Date shall be deemed to have forfeited its Claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution against the Debtor and its Estate, the Liquidating Trustee, the Liquidating Trust, and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property. In such cases, any Cash otherwise reserved for undeliverable or unclaimed Distributions shall become the property of the Liquidating Trust free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be distributed in accordance with the terms of this Plan and the Liquidating Trust Agreement. Nothing contained in this Plan or the Liquidating Trust Agreement shall require the Debtor, or the Liquidating Trustee to attempt to locate any holder of an Allowed Claim.

(C)    <u>Means of Cash Payment</u>.  Cash payments made pursuant to the Plan will be by the means agreed to by the Liquidating Trustee and the respective holders of Allowed Claims, including by check or wire transfer, or, in the absence of an agreement, such commercially reasonable manner as the Liquidating Trustee shall reasonably determine.

(D)    <u>Time Bar to Cash Payments</u>.  Checks issued by the Liquidating Trustee in respect of Allowed Claims will be void if not cashed within ninety (90) days after the date of their issuance.  Requests for reissuance of any check shall be made to the Liquidating Trustee by the holder of the Allowed Claim with respect to which the check originally was issued.  Any claim in respect of such a voided check must be made on or before the earlier of one hundred and eighty (180) days after the date of issuance of the check or within ninety (90) days after the final Periodic Distribution Date.  After such date, all claims in respect of void checks will be discharged and forever barred and the Cash, including interest earned thereon, if any, shall be distributed in accordance with the terms of the Plan.

(E)    <u>De Minimis Distributions</u>.  No Cash payment of less than fifty dollars ($50.00) will be made by the Liquidating Trustee on account of any Claim.  If at any time the total amount of Cash available for distribution to all holders of Allowed Claims is insufficient to pay any holder of an Allowed Claim at least fifty dollars ($50.00) and the Liquidating Trustee determines that, to the best of his knowledge, no more funds will subsequently become available for Distribution, then all of the remaining Cash may be donated to any charitable organization selected by the Liquidating Trustee which is qualified under Internal Revenue Code section 501(c)(3).

### 6.13    <u>Effect on Third Parties.</u>

There shall be no obligation on the part of any party dealing with the Liquidating Trustee to inquire into the validity or propriety of any transaction by the Liquidating Trustee or any agent thereof.  As of the Effective Date and pursuant to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall have signatory power and authority to act on behalf of the Estate and the Debtor without further action or authority by or from officers, directors, or shareholders of the Debtor, as may otherwise have been required under applicable law, and all third parties may rely upon such signature without further certification.

### 6.14    <u>Dissolution of the Creditors' Committee.</u>

On the Effective Date, the Creditors' Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except with respect to applications for Professional Fee Claims or reimbursement of expenses incurred as a member of the Creditors' Committee and any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order or pending appeals of Orders entered in the Chapter 11 Case; <u>provided</u>, <u>however</u>, that neither the Debtor nor the Liquidating Trust shall be responsible for payment of any fees incurred by the Creditors' Committee or its Professionals after the Effective Date.

### 6.15    Claims Filed After the Confirmation Date.

No Claim, or amendment to any Claim, other than as provided herein, shall be Filed after the Confirmation Date absent leave granted by the Bankruptcy Court or with the express written assent of the Liquidating Trustee.  Any such Claim or amendment to Claim Filed after the Confirmation Date without leave of the Bankruptcy Court shall be void, of no effect, and deemed disallowed.  The Liquidating Trustee shall have no obligation to respond in any way to any such Claim.

### 6.16    No Revesting of Assets.

The property of the Debtor's Estate shall not be vested in the Debtor on or following the Effective Date, but shall be vested in the Liquidating Trust and continue to be subject to the jurisdiction of the Bankruptcy Court following confirmation of the Plan until such property is distributed to holders of Allowed Claims in accordance with the provisions of the Plan, the Liquidating Trust Agreement, and the Confirmation Order.

### 6.17    Final Decree.

It shall be the sole and exclusive duty of the Liquidating Trustee to prepare and File a motion requesting that the Bankruptcy Court enter a Final Decree in the Chapter 11 Case.  The Liquidating Trustee shall not File a motion for entry of a Final Decree until all Claims are resolved and all distributions have been made to holders of Allowed Class 4 and Class 5 Claims or provision has been made to make such distribution after entry of the Final Decree.

## ARTICLE VII
## RESOLUTION OF CLAIMS

### 7.1    Procedure for Treating and Resolving Disputed, Contingent and/or Unliquidated Claims.

(A)    Objection Deadline; Prosecution of Objections.

The Liquidating Trustee shall have exclusive standing to File objections, settle, compromise, withdraw, or litigate to judgment objections to Claims.  All objections to General Unsecured Claims, Convenience Claims, and Section 503(b)(9) Claims must be Filed and served on the holders of such Claims by the Claim Objection Deadline, as the same may be extended by the Bankruptcy Court.  If an objection has not been Filed to a Proof of Claim or the Schedules have not been objected to or amended with respect to a Claim that (i) was Scheduled by the Debtor but (ii) was not Scheduled as contingent, unliquidated, and/or disputed, by the Claim Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the Proof of Claim or Scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier.  Notice of any motion for an order extending the Claim Objection Deadline shall be required to be given only to those persons or entities that have requested notice in the Chapter 11 Case, or to such persons as the Bankruptcy Court shall order.  Subject to the terms of the Liquidating Trust Agreement, from and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the

Bankruptcy Court.  Nothing contained herein, however, shall limit the right of the Liquidating Trustee to object to Claims, if any, Filed or amended after the Effective Date.

       (B)    <u>No Distributions Pending Allowance.</u>

       Notwithstanding any other provision of the Plan or the Liquidating Trust Agreement (but subject to section 7.1(d) of the Plan), no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim; provided, however, that if the only dispute regarding a Disputed Claim is to the Amount of the Disputed Claim, the holder of a Disputed Claim shall be entitled to a Distribution on account of that portion of the Disputed Claim which the Liquidating Trustee does not dispute at the time and in the manner that the Liquidating Trustee makes Distributions to holders of Allowed Claims pursuant to the provisions of the Plan.  Except as set forth in the Plan (but subject to section 7.1(d) of the Plan), to the extent that a Claim is not a Disputed Claim but is held by a holder that is or may be liable to the Debtor, the Liquidating Trustee, and/or the Liquidating Trust on account of a Cause of Action, then to the extent provided for under Bankruptcy Code section 502(d), no payments or distributions shall be made with respect to all or any portion of such Claim unless and until such Claim and liability have been settled or withdrawn or have been determined by Final Order of the Bankruptcy Court or such other court having jurisdiction over the matter.

       (C)    <u>Distributions after Allowance.</u>

       Payments and Distributions to each respective Claimholder on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made on or before the date that is thirty (30) days after a Disputed Claim becomes an Allowed Claim.  Any Distributions shall be made as if such Allowed Claim had been an Allowed Claim on the dates Distributions were previously made to holders of Class 4 Claims.

       (D)    <u>Special Provision Regarding Use of Bankruptcy Code Section 502(d) to Deny Distributions to Holders of Allowed Administrative Claims.</u>

       Notwithstanding anything to the contrary in the Plan or the Confirmation Order, but subject to further order of the Bankruptcy Court, the Liquidating Trustee may not use Bankruptcy Code section 502(d) as a basis for refusing to make a Distribution to holders of Allowed Administrative Claims unless the Bankruptcy Court enters an order authorizing Bankruptcy Code section 502(d) to be used for this purpose.  The Debtor may before the Effective Date, and the Liquidating Trustee may after the Effective Date, seek entry of an order authorizing Bankruptcy Code section 502(d) to be used as a basis for refusing to make a distribution to holders of Allowed Administrative Claims, and all parties in interest reserve any rights, claims, objections, and defenses to entry of such order by the Bankruptcy Court.

       (E)    <u>Service of Claim Objections.</u>

       Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the holder of a Claim if the Liquidating Trustee effects service in any

of the following manners: a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; b) to the extent counsel for a holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified on the proof of Claim or any attachment thereto; or c) by first class mail, postage prepaid, on any counsel that has appeared on behalf of any holder of a Claim in the Chapter 11 Case.

**7.2**     **Fractional Dollars.**

Any other provision of this Plan notwithstanding, the Liquidating Trustee shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

**7.3**     **No Interest Paid on Account of Allowed Claims.**

No interest, other than interest paid to the holder of an Allowed Secured Claim entitled to receive interest pursuant to the Bankruptcy Code, shall be paid on account of an Allowed Claim. Notwithstanding the foregoing, if all Allowed Claims in Class 4 have been paid in full, and all Disputed Claims have been resolved, then the holders of Allowed Claims in Class 4 shall receive Pro Rata Distributions from Available Cash, with such proration to be determined based on each holder's Allowed postpetition interest at the Case Interest Rate.

**7.4**     **Distribution Record Date.**

The Liquidating Trustee shall have no obligation to recognize the transfer of or sale of any participation in any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize, deal with and distribute only to those holders of Allowed Claims who are record holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date, as stated on the Claims Register.

**7.5**     **Setoffs**

(A)     By the Estate

Except as otherwise provided in the Plan, the Debtor (before the Effective Date), and the Liquidating Trustee (on and after the Effective Date), may, pursuant to applicable law, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, any Estate Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Estate, the Liquidating Trust or the Liquidating Trustee of any Estate Claim against such holder.

(B)     By Other Persons

Unless otherwise stipulated in writing by the Debtor (before the Effective Date) or by the Liquidating Trust (on and after the Effective Date), any party against whom an Estate Claim is asserted must assert any setoff rights, right of subrogation, or recoupment of any kind against such Estate Claim at the time such party answers such Estate Claim, or such right of setoff, subrogation, or recoupment will be deemed waived and forever barred; provided, however that nothing herein shall limit the assertion of such right of setoff, subrogation or recoupment via an amended or supplemental pleading to the extent permitted by Rule 15 of the Federal Rules of Civil Procedure and/or Rule 7015 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VIII
## EXECUTORY CONTRACTS AND LEASES

### 8.1    Generally.

Except as otherwise provided in the Confirmation Order or the Plan, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 rejecting all executory contracts and unexpired leases to which the Debtor is a party unless such contract or lease: (i) was previously rejected or deemed rejected; (ii) was previously assumed or assumed and assigned; (iii) is the subject of a pending motion for assumption or assumption and assignment; or (iv) is an insurance agreement of the Debtor, including, without limitation, those insurance agreements identified in the Plan Supplement; provided, however, that the Plan Proponents may amend such exhibit at any time prior to the Confirmation Date; provided further however, that listing an insurance agreement on such exhibit shall not constitute an admission by the Debtor that such agreement is an executory contract or that any Debtor has any liability thereunder.  Any Claims arising from the rejection of any executory contract by virtue of the entry of the Confirmation Order shall be forever barred unless a Rejection Claim relating thereto is Filed with the Bankruptcy Court within thirty (30) days after the Effective Date or within such further time as may be fixed by the Bankruptcy Court.

### 8.2    Rejection Claims.

Any Rejection Claim arising from the rejection of an unexpired lease or executory contract not barred by section 8.1 of the Plan shall, to the extent Allowed, be classified in Class 4 as a General Unsecured Claim subject to the provisions of section 502 of the Bankruptcy Code.

### 8.3    Assumed Contracts.

Except as otherwise provided in the Confirmation Order or the Plan, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 assuming, as of the Effective Date, the Debtor's insurance agreements, including, without limitation, those insurance agreements identified in the Plan Supplement; provided, however, that the Plan Proponents may amend such exhibit at any time prior to the Confirmation Date; provided further however, that listing an insurance agreement on such exhibit shall not constitute an admission by the Debtor that such agreement is an executory contract or that the Debtor has any liability thereunder.

## ARTICLE IX
## CONFIRMATION AND CONSUMMATION OF THE PLAN

**9.1**    **Conditions to Effective Date**.

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing by the Proponents:

(A)    The Confirmation Order shall have been entered and become a Final Order (subject to the right of the Proponents to waive collectively the Final Order condition to the Effective Date, if all other conditions have been met) and shall provide that the Debtor, prior to the Effective Date, and the Liquidating Trustee after the Effective Date, are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan or effectuate, advance, or further the purposes thereof;

(B)    All exhibits in the Plan Supplement shall be, in form and substance, reasonably acceptable to the Proponents, and shall have been executed and delivered by all parties signatory thereto;

(C)    All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed; and

(D)    All of the Assets of the Debtor shall have been transferred to the Liquidating Trust.

**9.2**    **Substantial Consummation**.

Substantial consummation of the Plan, as defined in Bankruptcy Code section 1101(2), shall not be deemed to have occurred unless and until the Face Amount of all Administrative Claims, Priority Tax Claims, and Other Priority Claims have been paid in full or, to the extent not paid in full, funds sufficient to satisfy the Face Amount of all such Claims have been placed in a segregated reserve.

**ARTICLE X**
**ACCEPTANCE OR REJECTION OF THE PLAN**

**10.1**    **Classes Presumed to Accept the Plan.**

Class 1, Class 2, and Class 3 are not impaired by the Plan.  Under Bankruptcy Code section 1126(f), such Claim holders are conclusively presumed to accept the Plan, and the votes of such Claim holders will not be solicited.

**10.2**    **Classes Entitled to Vote on the Plan.**

Class 4 and Class 5 are impaired by the Plan, and the votes of such Claim holders will be solicited with respect to the Plan.  In accordance with Bankruptcy Code section 1126(c) and except as provided in Bankruptcy Code section 1126(e), an impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds in dollar amount and

more than one-half (½) in number of the Claims of such Class that are entitled to vote and have timely and properly voted to accept or reject the Plan.

**10.3     Classes Presumed to Reject the Plan.**

Holders of Subordinated Claims in Class 6 and Equity Interests in Class 7 are not entitled to receive or retain any property under the Plan.  Under Bankruptcy Code section 1126(g), holders of Subordinated Claims in Class 6 and holders of Equity Interests in Class 7 are deemed to reject the Plan, and the votes of such holders will not be solicited.

**10.4     Cramdown Procedures.**

The Proponents will seek confirmation of the Plan from the Court by employing the "cramdown" procedures set forth in section 1129(b) of the Bankruptcy Code with respect to all classes rejecting the Plan, including, without limitation, Class 6 and Class 7.  The Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan or any Plan Exhibit or schedule, including amending or modifying the Plan or such exhibits or schedules to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**ARTICLE XI**
**MODIFICATION OF THE PLAN**

**11.1     Pre-Confirmation Modification.**

At any time before the Confirmation Date, the Plan may be modified by the Proponents upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code.  In the event that there is a modification of the Plan, then the Plan as modified shall become the Plan.

**11.2     Pre-Consummation Modification.**

At any time after the Confirmation Date, but before substantial consummation of the Plan, the Plan may be modified by the Proponents upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code.  The Plan, as modified under this section, becomes a Plan only if the Bankruptcy Court, after notice and hearing, confirms such Plan, as modified, under section 1129 of the Bankruptcy Code.

**11.3     Non-Material Modifications.**

At any time after the Confirmation Date, but before the Effective Date, the Proponents may modify the Plan without the approval of the Bankruptcy Court, provided that such modification does not materially or adversely affect the interest of holders of Claims, but only so as to remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent and effect of the Plan.

# ARTICLE XII
# RETENTION OF JURISDICTION

Following the Effective Date and until the entry of the Final Decree, the Bankruptcy Court shall, except as otherwise provided by applicable law or the Confirmation Order, retain jurisdiction of the Chapter 11 Case pursuant to the provisions of chapter 11 of the Bankruptcy Code to the fullest extent permitted by law, including among other things, with respect to the following matters:

(A)    To determine any and all objections to the allowance of Claims;

(B)    To determine any and all disputes arising under or in connection with the Plan, and to determine, to the extent requested by the Liquidating Trustee, any objections to Claims;

(C)    To determine any and all applications for allowance of compensation and reimbursement of expenses to the extent required herein;

(D)    To determine any and all pending applications for rejections of executory contracts and unexpired leases and the allowance of any Claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

(E)    To determine any and all applications, motions to conduct examinations pursuant to Bankruptcy Rule 2004, adversary proceedings and contested and litigated matters pending in the Chapter 11 Case as of, or after, the Effective Date which arise in connection with administration of the Estate or the interpretation or enforcement of the Plan;

(F)    To determine any Cause of Action;

(G)    To modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

(H)    To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

(I)    To determine such other matters which may be provided for in the Confirmation Order or as may otherwise be authorized under the provisions of the Bankruptcy Code or which relate to the exercise of rights and remedies contemplated by or referenced in the Plan;

(J)    To enforce all provisions under the Plan and Liquidating Trust Agreement;

(K)    To hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(L)    To hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

(M)    To hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation, and releases granted pursuant to this Plan;

(N)    To hear and determine all matters related to (1) the property of the Estate from and after the Confirmation Date, (2) the winding up of the Debtor's affairs, and (3) the activities of the Liquidating Trust and/or the Liquidating Trustee, including (a) challenges to or approvals of the Liquidating Trustee's activities, (b) resignation, incapacity or removal of the Liquidating Trustee and successor Liquidating Trustees, (c) reporting by, termination of and accounting by the Liquidating Trustee, and (d) release of the Liquidating Trustee from its duties;

(O)    To hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(P)    To enforce all orders previously entered by the Bankruptcy Court; and

(Q)    To enter any order, including injunctions, necessary to implement, consummate, or enforce the terms of the Plan, the Liquidating Trust Agreement or the provisions of the Bankruptcy Code, as the Bankruptcy Court may deem necessary.

## ARTICLE XIII
## MISCELLANEOUS

### 13.1    Bar Dates for Certain Claims.

(A)    <u>Administrative Claims</u>.  The Administrative Claim Bar Date for the Filing of all Administrative Claims (except for Section 503(b)(9) Claims) shall be thirty (30) days after the Effective Date.  Holders of asserted Administrative Claims, other than Professional Fee Claims and United States Trustee fees, not paid prior to the Confirmation Date must submit proofs of Administrative Claim on or before such Administrative Claim Bar Date or forever be barred from doing so.

(B)    <u>Professional Fee Claims</u>.  All final requests for compensation or reimbursement of Professionals pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code for services rendered to the Debtor, the Creditors' Committee or the Estate prior to the Effective Date must be Filed and served on the Debtor, its counsel, and counsel to the Creditors' Committee no later than forty-five (45) days following the Confirmation Date, unless otherwise ordered by the Bankruptcy Court.  Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be Filed and served on the Debtor, its counsel, counsel to the Creditors' Committee, and the requesting Professional or other Person no later than twenty (20) days (or such shorter period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

**13.2    Choice of Law.**

Except to the extent superseded by the Bankruptcy Code or other federal law, the rights, duties, and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Virginia, without regard to the choice of law rules thereof.

**13.3    Severability.**

Should any provision in the Plan be determined to be unenforceable, that determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**13.4    Successors and Assigns.**

The rights and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of that person.

**13.5    Binding Effect.**

The Plan will be binding upon and inure to the benefit of the Debtor and any and all holders of Claims or Equity Interests and their respective successors and assigns.

**13.6    Withholding and Reporting Requirements.**

In connection with the Plan and Distributions made pursuant to the Plan, the Liquidating Trustee will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority.  Notwithstanding the foregoing, neither the Liquidating Trustee nor any of his/her representatives shall be obligated for the withholding of any applicable taxes.  Rather, it is the beneficiaries' obligation  to pay any taxes that might be due on account of the Distributions.

No holder of an Allowed Class 4 or Class 5 Claim will receive a distribution to which it may be entitled to under the Plan unless and until such time as such holder has provided the Liquidating Trustee with an appropriate tax-payer identification number or other information reasonably requested by the Liquidating Trustee.  Any holder of an Allowed Claim that does not provide the Liquidating Trustee with an appropriate tax payer identification number or other information reasonably requested by the Liquidating Trustee within ninety (90) days after the final Periodic Distribution Date shall be deemed to have forfeited its Claim for any Distribution and shall be forever barred and enjoined from asserting any such Claim for any Distribution against the Debtor and its Estate, the Liquidating Trustee, the Liquidating Trust, and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property.  In such cases, any Cash otherwise reserved for such Distribution shall become the property of the Liquidating Trust free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be distributed in accordance with the terms of this Plan and the Liquidating Trust Agreement.

**13.7    Exculpation.**

Neither the Creditors' Committee, the Liquidating Trustee, the Oversight Committee, the Debtor, nor any of their respective present or former members, officers, directors, employees, general or limited partners, consultants, advisors, attorneys, or agents, shall have or incur any liability to any holder of a Claim or an Equity Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Filing and administration of the Chapter 11 Case, the pursuit of Confirmation of the Plan, the Disclosure Statement, the consummation of the Plan, the Liquidating Trust Agreement, or the administration of the Plan or the property to be distributed under the Plan. The terms of this section shall not apply to any liability of the Liquidating Trustee for his willful misconduct or gross negligence occurring after the Effective Date.  In all respects, the Debtor, the Creditors' Committee, and each of their respective members, officers, directors, employees, advisors and agents, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

**13.8    Release of Claims.**

Except as otherwise provided in the Plan, the rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction, and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims, from and after the Petition Date, against the Debtor, any of its Assets and the Debtor's Estate.  Except as otherwise provided in the Plan: (i) on the Effective Date, all Claims against the Debtor will be deemed satisfied and released in full, and (ii) all entities shall be precluded from asserting against the Liquidating Trustee, the Debtor and the Estate, their respective successors or assigns, or the Assets, any other or further Claims or Equity Interests that arose prior to the Confirmation Date.  The Confirmation Order shall be a judicial determination of release of all liabilities of the Debtor, subject to the occurrence of the Effective Date.  Except as otherwise provided in the Plan, neither the Plan, nor entry of the Confirmation Order, nor any failure to object to a Claim, shall have any res judicata, estoppel, or other preclusive effect as to the Debtor, the Liquidating Trustee, or their successors or assigns, with respect to any Cause of Action against any party.

**Furthermore, except as otherwise specifically provided herein, on and after the Effective Date, the Released Parties, for good and valuable consideration, including, but not limited to, the commitment, obligation and service of each of the aforementioned to facilitate the expeditious liquidation of the Debtor and the implementation of the Plan, shall automatically be deemed to be released by the Releasing Parties from any and all claims, obligations, rights, suits, damages, Causes of Actions, remedies and liabilities, whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that any of the Releasing Parties would have been legally entitled to assert (each in its own right, whether individually or collectively) based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, relating in any way to the Debtor, the Chapter 11 Case, the Plan, the**

**Disclosure Statement, or any related agreements, instruments, or other documents, except for (i) Claims arising under the Plan or any related agreements, instruments, releases, indentures, and other agreements and documents delivered thereunder, (ii) the Recipient Claims; and (iii) the Excluded Claims. In the event that it should ever become necessary to pursue claims, Causes of Action and/or legal action against any member of the Board with respect to the Excluded Claims, the Releasing Parties shall File any action in connection with the Excluded Claims on or before the Excluded Claims Deadline, and shall look first to the proceeds of any applicable insurance policy(ies) of the Debtor as a means of satisfying any such claim(s) against such member(s) of the Board and shall not seek recovery on any of such claims or Causes of Action from any other source, including, without limitation, the personal or other assets of any such Board member(s), or any person or entity related to or affiliated with such member(s) unless the proceeds of any applicable insurance policy(ies) are not available or sufficient to satisfy such claims for any reason. Notwithstanding the foregoing or anything to the contrary in the Plan, there shall be no limitation on the ability of the Liquidating Trust to object to any Claims filed by any of the Released Parties.**

       **13.9**    **Permanent Injunction.**

       (A)     Except as provided in the Plan or the Confirmation Order, including, but not limited to section 7.5 of the Plan, as of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that would be discharged upon Confirmation but for the provision of section 1141(d)(3) of the Bankruptcy Code or an Equity Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan will be permanently enjoined from taking any of the following actions on account of any such Claims, debts or liabilities or terminated Equity Interests or rights: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, the Estate, the Creditors' Committee, the Liquidating Trustee, and/or the Liquidating Trust, other than to enforce against the Liquidating Trust any right to a Distribution pursuant to the Plan; (2) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor, the Estate, the Creditors' Committee, the Liquidating Trustee, and/or the Liquidating Trust, other than as permitted pursuant to clause (1) above; (3) creating, perfecting, or enforcing any Lien or encumbrance against the Debtor, the Estate, the Creditors' Committee, the Liquidating Trustee, and/or the Liquidating Trust; and (4) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan, including, without limitation, section 13.7 of the Plan.

       (B)     As of the Effective Date, all entities that have held, currently hold, or may hold any Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities that are released pursuant to the Plan will be permanently enjoined from taking any of the following actions against the Debtor, the Estate, the Creditors' Committee, the Liquidating Trustee, the Liquidating Trust, and/or their respective property on account of such released Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities: (1) commencing or continuing in any manner any action or other proceeding; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (3) creating, perfecting or enforcing any Lien or encumbrance; and (4)

commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

(C)    By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim receiving Distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this section. The permanent injunction under this section shall apply to and inure to the benefit of, without limitation, the Debtor, the Creditors' Committee, the Liquidating Trustee, and the Liquidating Trust and any of their successors and assigns.

### 13.10    Effectuating Documents and Further Transactions.

The Chief Restructuring Officer shall be authorized to execute, deliver, file, or record such contracts, instruments, releases and other agreements or documents and take such actions on behalf of the Debtor as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan, without any further action by or approval of the Board of Directors of the Debtor.

### 13.11    Term of Injunctions or Stays.

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. Upon the Effective Date, the injunction provided in section 13.9 of the Plan shall apply.

### 13.12    Post-Confirmation Date Fees and Expenses of Professionals.

Subject to the terms of the Liquidating Trust Agreement and the Plan, after the Confirmation Date, the Liquidating Trustee shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the professional persons employed by the Liquidating Trustee in connection with the implementation and consummation of this Plan, the claims reconciliation process, and any other matters as to which such professionals may be engaged. The fees and expenses of such professionals shall be paid within ten (10) Business Days after submission of a detailed invoice.

### 13.13    No Discharge.

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge the Debtor.

### 13.14    Deletion of Classes and Subclasses.

Any Class or subclass of Claims that does not contain as an element thereof an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date of the commencement of the Confirmation Hearing shall be deemed deleted from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class or subclass under section 1129(a)(8) of the Bankruptcy Code.

**13.15   Withdrawal or Revocation.**

The Proponents may withdraw or revoke the Plan at any time prior to the Confirmation Date.  If the Proponents revoke or withdraw the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

**13.16   Courts of Competent Jurisdiction.**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**13.17   Headings.**

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**13.18   Notices.**

Any notice, request, or demand required or permitted to be made or provided to or upon the Debtor or the Liquidating Trustee hereunder shall be: (i) in writing; (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission, however, if said notice, request or demand is made by facsimile transmission then in that event the written notice, request or demand must also be served by first class mail; and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Tavenner & Beran, PLC
> 20 North 8th Street, Second Floor
> Richmond, VA  23219
> Attn:  Lynn L. Tavenner, Esq.
> Telephone:   (804) 783-8300
> Facsimile:    (804) 783-0178
>
> Bankruptcy Counsel for the Debtor
>
> —and—
>
> McGuireWoods LLP
> One James Center
> 901 East Cary Street

Richmond, VA 23219
Attn: Dion W. Hayes, Esq.
Telephone:   (804) 775-1000
Facsimile:   (804) 775-1061

Special Corporate Counsel for the Debtor

—and—

KDW Restructuring & Liquidation Services LLC
101 Park Avenue
New York, NY 10178
Attn: James Hunt
Telephone:   (212) 808-7800
Facsimile:   (212) 808-7897

—and—

333 West Wacker Drive, 26th Floor
Chicago, IL 60606
Attn: Mark Page, Esq.
Telephone:   (312) 857-7070
Facsimile:   (312) 857-7095

Liquidating Trustee

—and—

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard
Suite 1100
Los Angeles, CA 90067
Attention: Jeffrey N. Pomerantz, Esq.
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

Counsel for the Official Committee of Unsecured Creditors of
S&K Famous Brands, Inc.

—and—

Kaufman & Canoles, P.C.
150 West Main Street
Suite 2100
Norfolk, VA 23510
Attention: Paul K. Campsen, Esq.

Telephone: (757) 624-3000
Facsimile: (757) 624-3169

Counsel for the Official Committee of Unsecured Creditors of
S&K Famous Brands, Inc.

**13.19    Plan Supplement.**

The Proponents shall File the Plan Supplement on or before five (5) Business Days prior to the Confirmation Hearing, as it may be scheduled or extended by the Bankruptcy Court.  Upon Filing with the Bankruptcy Court, the Plan Supplement may be inspected in the Office of the Clerk of the Bankruptcy Court during normal business hours.  Holders of Claims may obtain a copy of the Plan Supplement upon written request to the Debtor in accordance with section 13.18 of the Plan.  The Plan Supplement is incorporated into and made a part of the Plan as if fully set forth in full herein.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[SIGNATURE PAGE TO FOLLOW]

Dated: December 7, 2009

     /s/  signature page to be provided
By:  Jonathan M. Tibus
ALVAREZ & MARSAL NORTH AMERICA LLC
Fairfax Square Tower 1
8065 Leesburg Pike, Suite 310
Vienna, VA 22182

Chief Restructuring Officer
of S&K Famous Brands, Inc.

Dated: December 7, 2009

     /s/  signature page to be provided
By:  Ronald M. Tucker
SIMON PROPERTY GROUP, INC.

Co-Chair of the Official Committee of Unsecured
Creditors of S&K Famous Brands, Inc.

-and-

     /s/  signature page to be provided
By: Arthur Brown
GMAC COMMERCIAL FINANCE LLC

Co-Chair of the Official Committee of Unsecured
Creditors of S&K Famous Brands, Inc.

\9653322.19